# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| BOBBI MILBRANDT | ) | CASE NO. |
| 15794 Sherri Road | ) | |
| Mount Vernon, Ohio 43050, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| RIVERSIDE RECOVERY SERVICES LLC | ) | |
| 402 Coshocton Street | ) | **JURY DEMAND ENDORSED** |
| Mount Vernon, Ohio 43050 | ) | **HEREIN** |
| | ) | |
| **Serve Also:** | ) | |
| Riverside Recovery Services LLC | ) | |
| c/o Travis W. Owens | ) | |
| 103 Second Avenue | ) | |
| Chesapeake, Ohio 45619 | ) | |
| | ) | |
| AMY SMART | ) | |
| 402 Coshocton Street | ) | |
| Mount Vernon, Ohio 43050 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Bobbi Milbrandt ("Milbrandt"), by and through undersigned counsel, as her Complaint against Defendant Riverside Recovery Services LLC ("Riverside"), states and avers the following:

## PARTIES, VENUE, & JURISDICTION

1. Milbrandt is a resident of the city of Mount Vernon, Knox County, Ohio.

2. At all times herein, Milbrandt was acting in the course and scope of her employment.

3. Riverside is a domestic limited liability company whose principal place of business is located at 402 Coshocton Avenue, Mount Vernon, Knox County, Ohio 43050 ("Mount Vernon Location").

4. Riverside is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. Amy Smart is Executive Director of Riverside.

6. Smart is a resident of the state of Ohio.

7. At all times herein, Smart was acting in the course and scope of her employment.

8. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Milbrandt is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 2000e ("Title VII"); and the Fair Labor Standards Act, 29 U.S.C. § 203 *et seq.* ("FLSA").

9. Material events alleged in this Complaint occurred in Knox County, Ohio.

10. This Court has supplemental jurisdiction over Milbrandt's state law claims pursuant to 28 U.S.C. § 1367 as Milbrandt's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12. Within 300 days of the conduct alleged below, Milbrandt filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-01120 against Riverside ("Milbrandt EEOC Charge").

13. Milbrandt dually filed the Milbrandt EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

14. On or about March 15, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Milbrandt regarding the Charges of Discrimination brought by Milbrandt against Riverside in the Milbrandt EEOC Charge.

15. Milbrandt received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

16. Milbrandt has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

17. Milbrandt has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

18. In or about February 2016, Milbrandt began working for Riverside.

19. Riverside initially employed Milbrandt as a counselor.

20. In or about December 2016, Riverside promoted Milbrandt to clinical supervisor.

21. In or about October 2017, Riverside promoted Milbrandt to clinical director.

22. Milbrandt's husband, Kris Milbrandt ("Kris Milbrandt"), worked for Riverside as an outpatient manager.

23. In or about October 2020, Kris Milbrandt had a sexual relationship with his subordinate, Stacey Aldridge ("Affair").

24. In or about October 2020, Milbrandt learned about the Affair.

25. On or about October 4, 2020, Milbrandt and her husband separated because of the Affair.

26. On or about October 4, 2020, Milbrandt reported the Affair to David Nelson ("Report of Affair").

27. On or about October 4, 2020, Milbrandt reported to Nelson that Riverside was requiring case managers and counselors, who were paid on an hourly basis, to work overtime off the clock to enter clinical documentation ("Report of Overtime Violations").

28. David Nelson was a clinical director for Riverside.

29. Sexual relationships between a superior and a subordinate have a high risk of coercion and/or harassment.

30. Riverside has a policy against sexual relationships between a superior and a subordinate.

31. Riverside has a policy against sexual relationships between a superior and a subordinate because sexual relationships between a superior and a subordinate have a high risk of coercion and/or harassment.

32. The Affair violated Riverside's policies.

33. In the Report of Affair, Milbrandt reported Kris Milbrandt's violation of Riverside's policies.

34. In the Report of Affair, Milbrandt opposed sexual harassment.

35. Riverside has a progressive disciplinary policy ("Discipline Policy").

36. A verbal warning is the lowest level of discipline in the Discipline Policy.

37. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

38. A termination is the highest level of discipline in the Discipline Policy.

39. Riverside did not give Kris Milbrandt a verbal warning due to the Affair.

40. Riverside did not give Kris Milbrandt a written warning due to the Affair.

41. Riverside did not terminate Kris Milbrandt's employment due to the Affair.

42. Riverside did not discipline Kris Milbrandt at all due to the Affair.

43. On or about October 7, 2020, Kris Milbrandt attempted to tender his resignation to Smart.

44. On or about October 7, 2020, Smart refused to accept Kris Milbrandt's resignation.

45. On or about October 7, 2020, Smart offered Kris Milbrandt a raise to stay with Riverside.

46. On or about October 7, 2020, Smart offered Kris Milbrandt a loan to cover expenses associated with his separation from Milbrandt.

47. On or about October 10, 2020, Milbrandt asked Smart for a loan to cover expenses associated with her separation from Kris Milbrandt.

48. On or about October 10, 2020, Smart refused to give a loan to Milbrandt.

49. Smart refused to give Milbrandt a loan because of her gender.

50. Smart refused to give Milbrandt a loan because of the Report of Affair.

51. Smart refused to give Milbrandt a loan because of the Report of Overtime Violations.

52. On or about October 10, 2020, Milbrandt complained to Smart that Smart was treating her worse than Kris Milbrandt because of her gender ("Report of Discrimination").

53. After the Report of Discrimination, Smart began to give Milbrandt daily reprimands about her performance ("Daily Reprimands").

54. Smart did not give Milbrandt daily reprimands prior to the Report of Discrimination.

55. The Daily Reprimands were an adverse action.

56. The Daily Reprimands would make a reasonable person less likely to make reports of discrimination.

57. Smart gave Milbrandt the Daily Reprimands because of her Report of Discrimination.

58. Smart gave Milbrandt the Daily Reprimands because of the Report of Affair.

59. Smart gave Milbrandt the Daily Reprimands because of the Report of Overtime Violations.

60. After the Report of Discrimination, Smart, Assistant Executive Director Flint Postle, and Clinical Supervisor Alex Stewart began to exclude Milbrandt from meetings about clinical work ("Exclusion from Meetings").

61. Prior to the Report of Discrimination, Smart, Postle, and Stewart included Milbrandt in meetings about clinical work.

62. The Exclusion from Meetings was an adverse action.

63. Riverside did the Exclusion from Meetings because of the Report of Discrimination.

64. Riverside did the Exclusion from Meetings because of the Report of Affair.

65. Riverside did the Exclusion from Meetings because of the Report of Overtime Violations.

66. On or about October 30, 2020, Milbrandt reasonably believed that her termination was imminent.

67. On or about October 30, 2020, a reasonable person in Milbrandt's position would have felt compelled to resign.

68. On or about October 30, 2020, Riverside constructively discharged Milbrandt ("Discharge").

69. The Discharge was an adverse action.

70. The Discharge was an adverse employment action.

71. Milbrandt did not receive a verbal warning before the Termination.

72. Milbrandt did not receive a written warning before the Termination.

73. Riverside knowingly took an adverse employment action against Milbrandt.

74. Riverside knowingly took an adverse action against Milbrandt.

75. Riverside intentionally took an adverse employment action against Milbrandt.

76. Riverside intentionally took an adverse action against Milbrandt.

77. Riverside willfully took an adverse employment action against Milbrandt.

78. Riverside willfully took an adverse action against Milbrandt.

79. On or about October 30, 2020, Riverside gave Milbrandt the Discharge because of her gender.

80. On or about October 30, 2020, Riverside gave Milbrandt the Discharge because she opposed gender discrimination.

81. On or about October 30, 2020, Riverside gave Milbrandt the Discharge because she reported unpaid overtime.

82. On or about November 9, 2020, Milbrandt filed articles of organization to start her own recovery center, Coshocton County Recovery LLC ("Coshocton Recovery").

83. In or about November 2020, Milbrandt met with a landlord to rent a location for Coshocton Recovery.

84. In or about November 2020, Smart learned that Milbrandt was starting Coshocton Recovery.

85. In November and December 2020, Smart contacted Coshocton Recovery's landlord in an attempt to rent a space for Riverside to open a competing recovery center in Coshocton ("Calls to Compete").

86. Smart made the Calls to Compete because she knew that Milbrandt was opening Coshocton Recovery.

87. Smart made the Calls to Compete because she wanted Milbrandt's business to fail.

88. The Calls to Compete were an adverse action.

89. The Calls to Compete would make a reasonable person less likely to report discrimination.

90. Smart made the Calls to Compete intentionally.

91. Smart made the Calls to Compete willfully.

92. Smart made the Calls to Compete in retaliation for Milbrandt's opposition to gender discrimination.

93. Smart made the Calls to Compete in retaliation for Milbrandt's opposition to unpaid overtime.

94. On or about December 29, 2020, Milbrandt, through counsel, sent a letter to Riverside and Smart ("Notice of Claims").

95. In the Notice of Claims, Milbrandt notified Riverside that she intends to pursue claims for gender discrimination and retaliation against Riverside.

96. In the Notice of Claims, Milbrandt opposed gender discrimination.

97. In the Notice of Claims, Milbrandt opposed overtime violations.

98. In the Notice of Claims, Milbrandt opposed retaliation.

99. Milbrandt sent the Notice of Claims via fax, email, and regular mail.

100. On or about December 29, 2020, Riverside received the Notice of Claims.

101. On or about December 31, 2020, Riverside filed an Ethics Grievance Form with the Ohio Chemical Dependency Professionals Board ("Retaliatory Grievance").

102. By filing the Retaliatory Grievance, Riverside sought for Milbrandt to lose her certification to perform recovery services.

103. The Chemical Dependency Professionals Board dismissed the Retaliatory Grievance.

104. The Retaliatory Grievance was an adverse action.

105. Riverside filed the Retaliatory Grievance because she opposed gender discrimination.

106. Riverside filed the Retaliatory Grievance because she opposed unpaid overtime.

107. Riverside filed the Retaliatory Grievance because she opposed retaliation.

108. Riverside filed the Retaliatory Grievance because she sent the Notice of Claims.

109. After the Discharge, Riverside billed more than 1,700 claims under Milbrandt's name ("Fraudulent Claims").

110. Making the Fraudulent Claims risked causing Milbrandt to lose her certification to perform recovery services.

111. The Fraudulent Claims were an adverse action.

112. Riverside made the Fraudulent Claims intentionally.

113. Riverside made the Fraudulent Claims willfully.

114. Riverside made the Fraudulent Claims because she opposed gender discrimination.

115. Riverside made the Fraudulent Claims because she opposed unpaid overtime.

116. Riverside made the Fraudulent Claims because she opposed retaliation.

117. Riverside made the Fraudulent Claims because she sent the Notice of Claims.

118. As a direct and proximate result of Riverside's conduct, Milbrandt suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: RETALIATION IN VIOLATION OF TITLE VII

119. Milbrandt restates each and every prior paragraph of this complaint, as if it were fully restated herein.

120. As a result of the discriminatory conduct described above, Milbrandt made the Report of Affair.

121. As a result of Riverside's discriminatory conduct described above, Milbrandt complained about the discrimination she was facing.

122. Subsequent to Milbrandt's reporting of discrimination, Riverside made the Daily Reprimands.

123. Subsequent to Milbrandt's reporting of discrimination, Riverside did the Exclusion from Meetings.

124. Subsequent to Milbrandt's reporting of discrimination, Riverside constructively discharged Milbrandt.

125. Subsequent to Milbrandt's reporting of discrimination, Riverside made the Calls to Compete.

126. Subsequent to Milbrandt's reporting of discrimination, Riverside made the Retaliatory Grievance.

127. Subsequent to Milbrandt's reporting of discrimination, Riverside made the Fraudulent Claims.

128. Riverside's actions were retaliatory in nature based on Milbrandt's opposition to the unlawful discriminatory conduct.

129. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing unlawful discrimination.

130. As a direct and proximate result of Riverside's conduct, Milbrandt suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

131. Milbrandt restates each and every prior paragraph of this complaint, as if it were fully restated herein.

132. As a result of the discriminatory conduct described above, Milbrandt made the Report of Affair.

133. As a result of Riverside's discriminatory conduct described above, Milbrandt complained about the discrimination she was facing.

134. Subsequent to Milbrandt's reporting of discrimination, Riverside made the Daily Reprimands.

135. Subsequent to Milbrandt's reporting of discrimination, Riverside did the Exclusion from Meetings.

136. Subsequent to Milbrandt's reporting of discrimination, Riverside constructively discharged Milbrandt.

137. Subsequent to Milbrandt's reporting of discrimination, Riverside made the Calls to Compete.

138. Subsequent to Milbrandt's reporting of discrimination, Riverside made the Retaliatory Grievance.

139. Subsequent to Milbrandt's reporting of discrimination, Riverside made the Fraudulent Claims.

140. Riverside's actions were retaliatory in nature based on Milbrandt's opposition to the unlawful discriminatory conduct.

141. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

142. As a direct and proximate result of Riverside's conduct, Milbrandt suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: RETALIATION IN VIOLATION OF FLSA

143. Milbrandt restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

144. Milbrandt complained to that Riverside did not pay hourly employees overtime compensation for hours they worked over 40 in a week ("Report of Overtime Violations").

145. Subsequent to Milbrandt's Report of Overtime Violations, Riverside made the Daily Reprimands.

146. Subsequent to Milbrandt's Report of Overtime Violations, Riverside did the Exclusion from Meetings.

147. Subsequent to Milbrandt's Report of Overtime Violations, Riverside constructively discharged Milbrandt.

148. Subsequent to Milbrandt's Report of Overtime Violations, Riverside made the Calls to Compete.

149. Subsequent to Milbrandt's Report of Overtime Violations, Riverside made the Retaliatory Grievance.

150. Subsequent to Milbrandt's Report of Overtime Violations, Riverside made the Fraudulent Claims.

151. Riverside's actions were retaliatory based on Milbrandt's report that Riverside did not pay hourly employees overtime compensation for hours they worked over 40 in a week.

152. Riverside intentionally retaliated against Milbrandt for her Report of Overtime Violations.

153. Riverside willfully retaliated against Milbrandt for her Report of Overtime Violations.

154. As a direct and proximate result of Riverside's conduct, Milbrandt has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT IV: RETALIATION IN VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ("OMFWSA")

155. Milbrandt restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156. Milbrandt made the Report of Overtime Violations.

157. Subsequent to Milbrandt's Report of Overtime Violations, Riverside made the Daily Reprimands.

158. Subsequent to Milbrandt's Report of Overtime Violations, Riverside did the Exclusion from Meetings.

159. Subsequent to Milbrandt's Report of Overtime Violations, Riverside constructively discharged Milbrandt.

160. Subsequent to Milbrandt's Report of Overtime Violations, Riverside made the Calls to Compete.

161. Subsequent to Milbrandt's Report of Overtime Violations, Riverside made the Retaliatory Grievance.

162. Subsequent to Milbrandt's Report of Overtime Violations, Riverside made the Fraudulent Claims.

163. Riverside's actions were retaliatory based on Milbrandt's report that Riverside did not pay hourly employees overtime compensation for hours they worked over 40 in a week.

164. Riverside intentionally retaliated against Milbrandt for her Report of Overtime Violations.

165. Riverside willfully retaliated against Milbrandt for her Report of Overtime Violations.

166. As a direct and proximate result of Riverside's conduct, Milbrandt has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

167. Milbrandt restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

168. Milbrandt is a member of a statutorily protected class based on her gender under Title VII.

169. Riverside treated Milbrandt differently than other similarly-situated employees based on her gender.

170. Riverside constructively discharged Milbrandt based on her gender.

171. Riverside's discrimination against Milbrandt based on her gender violates Title VII.

172. As a direct and proximate result of Riverside's conduct, Milbrandt suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 41120.01 *et seq.*

173. Milbrandt restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

174. Milbrandt is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

175. Riverside treated Milbrandt differently than other similarly-situated employees based on her gender.

176. Riverside constructively discharged Milbrandt based on her gender.

177. Riverside's discrimination against Milbrandt based on her gender violates R.C. § 4112.01 *et seq.*

178. As a direct and proximate result of Riverside's conduct, Milbrandt suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT VII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

179. Milbrandt restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

180. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

181. Smart aided, abetted, incited, coerced, and/or compelled Riverside's discriminatory constructive discharge of Milbrandt.

182. Smart aided, abetted, incited, coerced, and/or compelled Riverside's discriminatory treatment of Milbrandt.

183. Smart violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

184. As a direct and proximate result of Smart's conduct, Milbrandt has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff Milbrandt respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Riverside to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Riverside to restore Milbrandt to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Milbrandt for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Milbrandt claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*_____
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Bobbi Milbrandt*

## JURY DEMAND

Plaintiff Milbrandt demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*_____
Trisha Breedlove (0095852)
Paul Filippelli (0097085)